UNITED STATES of America,
Plaintiff–Appellee,

v.

Javier Rodriguez SOTO, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Francisco VALENCIA,
Defendant–Appellant.

Nos. 92–50230, 92–50254.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1993.

Decided Aug. 4, 1993.

As Amended Sept. 20, 1993.

Loretta S. Shartsis, Sherman Oaks, CA, for defendant-appellant Javier Rodriguez Soto.

Roger S. Hanson, Santa Ana, CA, for defendant-appellant Jose Francisco Valencia.

Robert L. Brosio and Walter F. Brown, Jr., Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee U.S.

Before: KOZINSKI, SUHRHEINRICH * and T.G. NELSON, Circuit Judges.

---

* The Honorable Richard F. Suhrheinrich, Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

SUHRHEINRICH, Circuit Judge:

Javier Rodriguez–Soto (Soto) and Jose Francisco–Valencia (Valencia) appeal their convictions for conspiracy to distribute and to possess with intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 846. Valencia also appeals his conviction for possession with intent to distribute fifty-four kilograms of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1). Both defendants claim an impermissible variance in the indictment. Valencia also alleges prosecutorial misconduct, a speedy trial violation, and improper exclusion of expert testimony. Finding each of these contentions to be without merit, we **AFFIRM.**

## I.

On August 29, 1991, following an undercover narcotics investigation, members of the Los Angeles Police Department seized fifty-four kilogram packages from co-defendant Guilberto Silva De La Torre's residence. The same day, the Los Angeles County Attorney's Office charged Valencia, Soto, De La Torre, and several others in the Los Angeles Superior Court with violations of the state narcotics laws. The state attorney's office dismissed its charges against defendants, however, after the present federal charges were brought.

On September 13, 1991, the United States Attorney's Office for the Central District of California filed a criminal complaint against the same defendants, and on October 1, 1991, a federal grand jury returned a three-count indictment against Valencia, Soto, De La Torre, Jesus Ramirez and Maria Del Rocio Valencia Shirley. Count one charged all defendants with conspiring to distribute and to possess with intent to distribute excess of five kilograms of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846. Count two charged defendants Valencia, De La Torre and Shirley with possessing with intent to distribute approximately fifty-four kilograms

of a mixture or substance containing a detectable amount cocaine, in violation of 21 U.S.C. § 841(a)(1). Count three charged all defendants with possessing with intent to distribute approximately fifteen kilograms of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1).[1]

At trial the government established through the stipulated testimony of LAPD Forensic Chemist Joseph Hourigan, that the contents of each of the packages consisted of "a mixture or substance containing a detectable amount of cocaine hydrochloride." The jury found Valencia guilty of counts one and two. Soto was convicted of count one and acquitted on count three. These appeals followed.

## II.

### A.

■ Both defendants contend that the district court erred in denying their motion for judgment of acquittal on the grounds that the proof at trial varied from the charges of which they were convicted. As noted, the indictment charged defendants with conspiring to "possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine...." Defendants claim that the charged offenses related to "cocaine" or "cocaine base," but that the proof offered at trial related to "cocaine hydrochloride." Defendants contend that as a matter of scientific fact, the compound "cocaine" is identical to the compound "cocaine base" and that both are distinct from the compound "cocaine hydrochloride."

■ A variance in proof occurs when the charging terms of the indictment are not challenged, but the evidence offered at trial proves facts materially different from those alleged in the indictment. *United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir.1992) (per curiam) (citations omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 1427, 122

L.Ed.2d 795 (1993). Reversal is not required however unless the defendant shows prejudice thereby. *Id.* (citations omitted).

■ Defendants' argument overlooks the fact that the legal definitions of cocaine, cocaine base and cocaine hydrochloride differ from their chemical definitions. First of all, cocaine and cocaine base are not synonymous terms under the penalty provisions of 21 U.S.C. § 841(a). *See* 21 U.S.C.A. §§ 841(b)(1)(A)(ii)(II) (West Supp.1993) (designating penalty for violation of "5 kilograms or more of a mixture or substance containing a detectable amount of cocaine....") and (b)(1)(A)(iii) (describing penalty for offense involving "50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base ...."). Thus, the question becomes whether "cocaine hydrochloride" falls under the rubric "cocaine," "cocaine base," or some other subsection of 841(b). This court has noted that the term "cocaine base" excludes some forms of cocaine, namely cocaine salts, such as cocaine hydrochloride. *United States v. Van Hawkins*, 899 F.2d 852, 854 (9th Cir.1990) (dicta) (holding that 21 U.S.C. § 841(b) was not unconstitutionally vague because expert testimony in case indicated that term "cocaine base" excludes "cocaine hydrochloride," which is a cocaine salt). As a "salt" of cocaine, cocaine hydrochloride is thus encompassed in the legal definition of cocaine under § 841(b)(1)(A)(ii)(II), which proscribes the penalty for violations of § 841(a) involving "5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, *its salts*, optical and geometric isomers, and salts of isomers ..." (emphasis added). Thus, under § 841(b) cocaine hydrochloride is defined as cocaine. Therefore, no variance occurred.

The Sentencing Guidelines lend further support. *See United States v. Shaw*, 936 F.2d 412, 415 (9th Cir.1991) (presumption that Sentencing Commission intended Guidelines terms to have same meaning as terms Congress used in correlating statutes). The

---

1. The government dismissed the entire indictment, as to defendant Valencia Shirley, and count three of the indictment, as to defendant Valencia prior to trial. Defendants Ramirez and

Silva De La Torre pleaded guilty prior to trial. The jury convicted defendant Rodriguez of count one of the indictment.

Guidelines do not differentiate between cocaine and cocaine salts; but draw distinctions only between cocaine and cocaine base. *See* U.S.S.G. § 2D1.1(c) (Nov. 1991). The application notes provide that "[a]ny reference to a particular controlled substance in these guidelines includes all *salts,* isomers, and all salts of isomers." *Id.* § 2D1.1, comment. (n. 5) (emphasis added). Thus, there was no factual variance between the indictment and the proof at trial.

■ Assuming there had been a variance, defendants have not established prejudice. In fact, had they been charged and sentenced for possession of cocaine base, they would have received a greater sentence because the penalty for cocaine base is more severe than that for cocaine. *Cf.,* 21 U.S.C. §§ 841(b)(1)(A)(ii)(II) and (b)(1)(A)(iii) (providing same penalties for five kilograms of cocaine and fifty grams of cocaine base). *See also* U.S.S.G. § 2D1.1(c)(2) (giving base offense level of 40 to offenses involving five kilograms of cocaine base) and (c)(6) (base offense level of 32 appropriate for crime involving five kilograms of cocaine).

### B.

■ Valencia claims that the district court erred in refusing to dismiss the indictment for prosecutorial misconduct. Specifically, he contends that the government and the State of California deprived him of due process by conspiring to dismiss the state charges in favor of the federal ones. Absent any allegation that the prosecutor's charging decision was based on an unconstitutional motive such as gender or race, we lack the authority to review his claim. *Wade v. United States,* —— U.S. ——, ——, 112 S.Ct. 1840, 1844, 118 L.Ed.2d 524 (1992); *United States v. Sitton,* 968 F.2d 947, 953 (9th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1306, 122 L.Ed.2d 695 (1993). Had we reviewed the merits, we would have rejected the challenge anyway because "there are no grounds for finding a due process violation, even when the motive for federal prosecution is that harsher sentences are possible." *United States v. Nance,* 962 F.2d 860, 865 (9th Cir.1992).

### C.

■ Valencia also argues that he was deprived of his right to a speedy trial under the Speedy Trial Act because his state arrest occurred on August 29, 1991, and the federal indictment was not handed down until October 1, 1991. Defendant therefore claims that he was deprived of his right to be charged by indictment within thirty days of arrest. *See* 18 U.S.C. 3161(b). This court has held however, that the date of the defendant's state arrest does not initiate the federal prosecution for the purpose of his speedy trial right. *United States v. Romero,* 585 F.2d 391, 398 (9th Cir.1978), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979). "[T]he speedy trial right under the Sixth Amendment is not activated until the date of *federal* accusation." *Id.* (internal quotations and brackets omitted) (emphasis in original). Thus, because Valencia's speedy trial rights did not arise until the date of the federal indictment, there was no violation of the Speedy Trial Act. Finally, notwithstanding his claim, Valencia's trial was commenced within seventy days from the filing of the federal indictment. This contention is without merit.

### D.

■ Lastly, Valencia asserts that the district court erred when it excluded testimony from an expert witness in organic chemistry. The district court has wide latitude to exclude expert testimony, and we will reverse its decision only for manifest error. *United States v. Sinigaglio,* 942 F.2d 581, 584 (9th Cir.1991). We agree with the district court that the proffered testimony would not have materially assisted the jury since it was offered in support of defendants' theory that cocaine, as charged in the indictment, is not cocaine hydrochloride, which we have just rejected.

### III.

For all the foregoing reasons, defendants' convictions are **AFFIRMED**.