15 F.3d 1093
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Nathan LIMA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pati SIMMONS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mila del ROSARIO, Defendant-Appellant.
 Nos. 93-50024, 93-50027 and 93-50028.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 3, 1994.*
Decided Jan. 5, 1994.
 
 1
 Before: GOODWIN and HALL, Circuit Judges, and TANNER, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Defendants Nathan Lima, Pati Simmons and Mila del Rosario appeal their convictions for conspiring to assist illegal aliens in filing false statements with the Immigration and Naturalization Service (INS). Defendants Lima and del Rosario also appeal their sentences.
 
 
 4
 In the mid 1980's Congress passed legislation that allowed aliens with continuous but illegal residence in the United States since 1981 to obtain temporary resident status. The application period for participation in this amnesty program ran from May 1987 to May 1988.
 
 
 5
 Pursuant to the decisions in two class action lawsuits, the INS reopened the application period for aliens who could qualify as a member of either class. See Catholic Social Serv., Inc. v. Thornburgh, 956 F.2d 914 (9th Cir.1992), vacated and remanded, Reno v. Catholic Social Serv., Inc., 113 S.Ct. 2485 (1993). The applicants involved in this case all claim membership in the class of persons that travelled briefly outside the United States for innocent reasons between May 1987 and May 1988 and then re-entered the country without INS approval. To qualify as a class member, the alien must have also filed a timely application and have been denied the status, or must have failed to file a timely application under the mistaken belief that his brief absence from the country disqualified him from participation in the amnesty program.
 
 
 6
 In 1989, due to the large number of amnesty applications, the INS approved the use of privately run centers, "Qualified Designated Entities" (QDE), to aid in screening and processing amnesty applications. The INS certified Velez & Velez (the Velez office) located in Las Vegas, Nevada, as a QDE.
 
 
 7
 In late 1989, the Velez office implemented the "team leader" approach to obtaining applicants and processing applications. A "team leader," an individual not employed by the Velez office, would contact immigrants and refer them to the Velez office. The team leader could charge any fee she desired, retaining all of the fee in excess of the $585 due the Velez office for each applicant. Defendant Mila del Rosario was a "team leader."
 
 
 8
 The Velez office assigned a "case worker," such as defendant Nathan Lima, to each applicant. When the application appeared complete, the Velez office would submit the application to the INS and schedule an appointment with INS personnel. Once scheduled, the applicant would come to Las Vegas for a final, pre-INS briefing and the case worker would accompany the applicant to the INS office. During this period, in March 1990, the Velez office hired defendant Pati Simmons to assist in processing the amnesty applications.
 
 I.
 
 9
 Del Rosario and Simmons contend that a variance between the indictment and the proof offered at trial prejudiced their substantial rights. "A variance in proof occurs when the charging terms of the indictment are not challenged, but the evidence offered at trial proves facts materially different from those alleged in the indictment." United States v. Soto, 1 F.3d 920, 922 (9th Cir.1993). We will reverse, however, only if this variance prejudices the defendant's substantial rights. "Such prejudice may result in three ways: 1) inadequate opportunity to prepare a defense and exposure to unanticipated evidence at trial; 2) deprivation of the right to be tried on charges presented in an indictment returned by a grand jury; and 3) exposure to prejudicial evidentiary spillover." United States v. Morse, 785 F.2d 771, 775 (9th Cir.), cert. denied, 476 U.S. 1186 and 479 U.S. 861 (1986).
 
 
 10
 We do not find a variance. Defendants do not contend that the evidence establishes a number of smaller conspiracies rather than the one conspiracy charged in the indictment. United States v. Kenny, 645 F.2d 1323, 1334 (9th Cir.) (variance in proof occurs when jointly tried defendants charged with participating in single cert. denied, 452 U.S. 920 and 454 U.S. 828 (1981); see, e.g., Kotteakos v. United States, 328 U.S. 750, 755 (1946); Berger v. United States, 295 U.S. 78, 81 (1935). Instead, defendants allege that evidence of their alleged participation in a larger conspiracy involving unindicted individuals in the Velez office constitutes a variance in proof. Although defendants might have objected to this testimony as "other crimes" evidence,[1] defendants have not framed the issue as such in this appeal. Furthermore, despite the government's motion in limine directed to this evidence filed months before trial, defendants did not present any such objection to the trial court either.
 
 
 11
 Even if we were to treat the evidence as creating a variance, we find no prejudice to defendants' substantial rights. Defendants were tried on the charges presented to the grand jury, although the evidence also suggested they might have been part of another larger conspiracy. The government's motion in limine provided defendants with adequate notice of the evidence that would be used against them at trial. The testimony in question focused on other crimes committed by each defendant and did not expose defendants to prejudicial spillover from evidence of acts of individuals not shown to be coconspirators. See Kotteakos, 328 U.S. at 774 ("The dangers of transference of guilt from one [defendant] to another across the line separating conspiracies, subconsciously or otherwise, are so great that no one can really say prejudice to substantial rights has not taken place."). Moreover, the district court instructed the jury that it could not convict defendants if it found they participated in an uncharged conspiracy but were not members of the charged conspiracy.[2] In sum, we find neither a variance nor prejudice to substantial rights.
 
 II.
 
 12
 Lima and Simmons challenge the sufficiency of the evidence to support a finding that they participated in a conspiracy to assist illegal aliens in filing false statements with the INS. "The essential elements of a conspiracy are (1) an agreement to accomplish an illegal objective; (2) the commission of an overt act in furtherance of the conspiracy; and (3) the requisite intent necessary to commit the underlying offense." United States v. Taren-Palma, 997 F.2d 525, 536 (9th Cir.1993).
 
 
 13
 a. Nathan Lima
 
 
 14
 The evidence at trial established that Lima had direct contact with several applicants recruited by or for del Rosario, that Lima counseled these individuals to falsify their applications and that he received a $50 tip from del Rosario for each applicant. The jury also heard testimony that Lima accompanied one del Rosario applicant, Maribel Lopez, to the INS office to obtain renewal of her temporary work permit.[3] Although the INS denied the request because it did not find that Lopez satisfied the residence requirement for the amnesty program, del Rosario instructed Lopez and her mother to return to the Velez office. Lima met with Lopez and her mother and encouraged them to create and submit a fraudulent certificate of cohabitation so as to establish Lopez's residence in the United States since 1981. After viewing the evidence in the light most favorable to the government, we find that a rational trier of fact could have found Lima guilty beyond a reasonable doubt. See United States v. Stauffer, 922 F.2d 508, 514 (9th Cir.1990).
 
 
 15
 b. Pati Simmons
 
 
 16
 Where the government has proved the existence of a conspiracy, "evidence establishing beyond a reasonable doubt defendant's connection with the conspiracy, even though the connection is 'slight,' is sufficient to convict defendant of knowing participation in the conspiracy." Id. at 514-15. Although mere proximity to a conspiracy does not suffice, see United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987), the government presented evidence that Simmons personally falsified one application submitted by a Special Agent (SA) posing as a del Rosario recruit. Simmons entered a false exit date on the SA's application and without asking the SA why she did not apply for amnesty during the initial application period, Simmons told the SA the answer she should enter for that question on the application. As the SA prepared to leave, Simmons told her: "In the meantime, if you can get hold of Mila ... and then just tell her that Pete [Velez] ... and tell Patty got your case ... and she knows who I am. Patty got my case and she's gonna fix it up." From this evidence, a rational trier of fact could find Simmons guilty beyond a reasonable doubt.
 
 
 17
 Simmons maintains that we cannot place much weight on this evidence because the SA's file was ultimately marked "Possible Fraud." Viewing the evidence in the light most favorable to the government, however, we conclude that this notation most probably refers to the fact that the SA had not paid del Rosario for her service. Although Simmons questioned the SA at length about her possession of a receipt from del Rosario, Simmons did not evince any qualms regarding the SA's qualifications for amnesty. Moreover, del Rosario and not Simmons requested that the file be marked as a possible fraud.
 
 
 18
 Simmons also contends that the jury could not find that she participated in the charged conspiracy because she barely knew her co-defendant Nathan Lima. The government does not have to prove that a defendant knew all of the details of the conspiracy. United States v. Vaughn, 797 F.2d 1485, 1492 (9th Cir.1986). Accordingly, we find the evidence was sufficient.
 
 III.
 
 19
 Del Rosario also raises several issues regarding her entry and subsequent withdrawal of a guilty plea. During the fifth day of the jury trial, del Rosario informed the court that she wished to enter a plea of guilty. The government advised the district court and del Rosario that it would request del Rosario's immediate remand into custody. The district court accepted del Rosario's plea and proceeded to hear argument on the issue of remand.
 
 
 20
 The government argued that del Rosario was a flight risk because (1) she faced immediate deportation from the United States, (2) she had significant ties to the Philippines, (3) she faced possible further prosecution in connection with an ongoing investigation of the Velez organization, (4) she had no employment (5) she could face a sentence much longer than her time served, and (6) other individuals who had participated in similar fraudulent schemes involving the Velez office had fled the jurisdiction after conviction at trial. Based on this information, the court ordered that del Rosario be remanded into custody.
 
 
 21
 Realizing that del Rosario had not wished to plead guilty if she would lose her freedom, the court offered her the opportunity to withdraw her plea. Del Rosario accepted the district court's offer and requested to withdraw her plea. The district court granted her request and then ordered her remanded into custody.[4] The court's order surprised Del Rosario because she had believed if she withdrew her plea she would be allowed to remain free on bond. The record reveals, however, that the district court did not make such a representation. Moreover, after withdrawing her plea, del Rosario apparently believed she could reinstate her plea and contemplated such action but rejected it.[5] Del Rosario did not object to the court accepting her request to withdraw her plea. We do not find that the district court's actions constitute plain error.
 
 
 22
 In allowing del Rosario to withdraw her plea, the court vacated its order of mistrial. Del Rosario contends that the court and the government provoked her motion for a mistrial. Hence, she argues, the court could not vacate the order and continue with the trial.
 
 
 23
 Before beginning the plea proceedings, defense counsel acknowledged that he would make a motion for mistrial if the court accepted del Rosario's plea.[6] At the time for making such a motion, the government reminded the court that it "need[ed] that mistrial motion made in the transcript." (GER 323) Counsel for the government noted that "[i]t wasn't [his] motion." The court recognized this fact and granted the motion for mistrial "at the request of the defendant, made earlier." (GER 323) After the district court allowed del Rosario to withdraw her guilty plea, defense counsel stated, "And I suppose I have to withdraw my motion for--." Although not allowed to complete his thought, the court and the government understood defense counsel to be referring to his motion for a mistrial.
 
 
 24
 "Express consent to mistrial, including a defense mistrial motion, usually removes any double jeopardy bar to reprosecution." United States v. Nelson, 718 F.2d 315, 320 (9th Cir.1983). The sole exception is where the governmental "conduct giving rise to the successful motion for mistrial was intended to provoke the defendant into moving for a mistrial." Oregon v. Kennedy, 456 U.S. 667, 679 (1982). The burden is on the appellant to persuade the court that retrial should be barred because the prosecutor provoked the defendant into moving for a mistrial. United States v. Lun, 944 F.2d 642, 644, 647 (9th Cir.1991).
 
 
 25
 Del Rosario did not object to the trial court on the basis that she had not made the motion for mistrial. We find that the absence of a formal motion does not constitute plain error and therefore does not warrant reversal. Furthermore, we conclude that del Rosario has not carried her burden of persuasion on the issue of provocation. When a defendant seeks to enter a plea after jeopardy has attached, it is fair to require defendant to move for a mistrial. See Taylor v. Kincheloe, 920 F.2d 599, 605 (9th Cir.1990) ("where the prosecutor is not responsible for the withdrawal or vacation of a defendant's guilty plea, the defendant legitimately may be exposed to the original charges, though the plea was entered sometime after a trial began"). Finally, we note that the motion for mistrial was both granted and vacated outside the presence of the jury, thereby causing del Rosario no prejudice. We find no basis for reversing the district court's actions.
 
 IV.
 
 26
 Defendants Lima and del Rosario also appeal their sentences.
 
 
 27
 a. Nathan Lima
 
 
 28
 The district court increased Lima's offense level by seven to reflect the entire gain to the del Rosario conspiracy. The Presentence Report (PSR) acknowledged that Lima may only be held accountable for conduct of the conspiracy "jointly undertaken" and "reasonably foreseeable." See U.S.S.G. Sec. 1B1.3, comment. (n. 2). The PSR also found that "[t]he information available reflects [that Lima] clearly had knowledge of the entire scope of this conspiracy." The district court "took" the PSR and moved the guideline range down by one level, to reflect his finding that the average fee collected from the applicants was $2500 and not $3250, the figure used in the PSR. Moreover, the district court added its own implicit finding of reasonable foreseeability when it stated that "anybody that came up the pipeline with Trinity Foliente and Miss del Rosario, if things happened in the ordinary course, they bump into Mr. Lima." Lima testified that from January through mid-April 1990, the del Rosario team brought approximately ten applications per week to the Velez office to be handled by Lima. The district court held Lima accountable for 80 applicants. We find that the district court made the requisite findings, see United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1990); United States v. Rigby, 896 F.2d 392, 394 (9th Cir.1990), and that its conclusions were not clearly erroneous, see United States v. Cambra, 933 F.2d 752, 756 (9th Cir.1991).
 
 
 29
 b. Mila del Rosario
 
 
 30
 Del Rosario raises two challenges to her sentence. First, she contends that the district court erred in finding that she managed or supervised criminal activity involving five or more participants or that was otherwise extensive. U.S.S.G. Sec. 3B1.1(b). Three individuals pleaded guilty to participating in this fraud scheme and the three defendants in this appeal were convicted of conspiring to assist illegal aliens in filing false statements with the INS. The district court's conclusion that the criminal activity involved five or more participants was not clearly erroneous.
 
 
 31
 There was also evidence that del Rosario controlled the money, set the fees charged to the applicants, received the payments from the applicants or their agent/recruiters and then distributed a portion to the Velez office, the case worker and to the agent/recruiters. She retained the balance for herself. From this evidence, the district court could conclude that del Rosario managed at least three other participants in their efforts to recruit illegal aliens. United States v. Helmy, 951 F.2d 988, 997 (9th Cir.1991) (defendant receiving adjustment under Sec. 3B1.1(b) must manage or supervise at least one other participant), cert. denied, 119 S.Ct. 211 (1992). The district court properly increased del Rosario's offense level by three to reflect her role in the offense.
 
 
 32
 Del Rosario also contends that the district court improperly determined the loss adjustment under Sec. 2F1.1 because it based the adjustment on the total fees charged to the applicants by the del Rosario team without reducing this figure by the amount paid to the Velez office and to other coconspirators.
 
 
 33
 Section 2F1.1 directs the sentencing court to adjust defendant's offense level to reflect the loss suffered as a consequence of defendant's criminal activity. The district court treated the illegal-alien applicants as coconspirators and therefore determined that the government was the victim. Finding it difficult to ascertain the loss to the government, the court turned to application note 8, advising that "[t]he offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss."
 
 
 34
 Del Rosario acknowledges that loss to the victim is generally not distributed among the defendants. We do not find persuasive her argument that when the loss is to the government and is difficult to estimate, this circumstance should change. Whatever significance the Commission intended in changing the language in application note 8 from the "offender's gross gain" to the "offender's gain," we do not find that this revision required the district court to consider del Rosario's "net" gain, after payment of expenses.[7] Moreover, the district court's loss calculation, a specific offense characteristic, is consistent with the relevant conduct provisions of Sec. 1B1.3. We find no error in the sentence imposed by the district court. See U.S.S.G. Sec. 2F1.1 comment. (n. 8) ("court need only make a reasonable estimate of the loss, given the available information").
 
 
 35
 The decisions of the district court are AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34.4
 
 
 **
 The Honorable Jack E. Tanner, Senior District Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident
 Fed.R.Evid. 404(b). The government's motion in limine regarding this evidence explained that it offered the evidence to show intent or motive.
 
 
 [2]
 The statements made by the district court that Simmons cites in her brief were made during the district court's decision to give this instruction
 
 
 [3]
 "While the appeals [from the class action lawsuits] were pending in the Ninth Circuit, the orders of the District Courts were each subject to a stay order. Under the terms of each stay order, the INS was obliged to grant a stay of deportation and temporary work authorization to any class member whose application made a prima facie showing of eligibility for legalization, but was not obliged to process the applications." Reno v. Catholic Social Serv., Inc., 113 S.Ct. 2485, 2493 n. 13 (1993) (emphasis added)
 
 
 [4]
 The district court vacated its order for immediate remand and issued an order for home detention with electronic monitoring for the duration of the trial
 
 
 [5]
 The district court told defense counsel: "She took the risk. It came out wrong, and now I will let you say in that circumstance, if I'm going to be in custody, then I don't want to be in custody pursuant to a plea, I want to go to the jury, and then maybe I can get out in five minutes, but that's all you're going to get. That's all I can do." To this, defense counsel responded: "Will you give me five days if we keep our plea to get our affairs in order and then surrender?" The district court denied this request. (GER 338E)
 Soon thereafter defense counsel again asked: "Assuming we didn't undo all this mistrial and pleading, we could work out home detention until December 2nd, is that objectionable to this Court?" The court again denied the request. (GER 339-40)
 
 
 [6]
 After the government explained the need for a motion for mistrial, defense counsel stated: "I have no problem with that. I'd [sic] not sure that motion should be made. You can take it under submission and I'll so make the motion if you accept her plea. If you don't accept her plea, I won't make the motion." (GER 296)
 
 
 [7]
 Del Rosario cites numerous cases considering net versus gross gain, but they are not instructive. Those decisions address the issue of "intended loss." See United States v. Shaw, 3 F.3d 311, 313 (9th Cir.1993) (resolving issue of "intended loss" for the Ninth Circuit)