**UNITED STATES of America,**

**v.**

**Roddrick GANIOUS, Defendant.**

**No. 07–cr–30022–MAP.**

United States District Court,
D. Massachusetts.

July 17, 2009.

Michelle L. Dineen Jerrett, Alex J. Grant, United States Attorney's Office, Springfield, MA, for United States of America.

Perman Glenn, III, Law Office of Perman Glenn, III, Springfield, MA, for Defendant.

*MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS* (Dkt. No. 219)

PONSOR, District Judge.

## I.  INTRODUCTION

Defendant Roddrick Ganious has requested an evidentiary hearing concerning his Motion to Dismiss for violations of the Speedy Trial Act, 18 U.S.C. § 3161, and Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

For the reasons stated below, Defendant's Motion to Dismiss will be denied.[1]

## II.  FACTS

### A.  Background

Defendant has been charged in a second superseding indictment with three counts of conspiracy to possess with intent to distribute and distribution of cocaine in violation of 21 U.S.C. § 846 and aiding and abetting the same in violation of 18 U.S.C. § 2. Dkt. No. 195.  The Government has filed an information pursuant to 21 U.S.C. § 851, with the result that Defendant, if convicted, will face a mandatory sentence of 20 years imprisonment without release on the basis of one prior felony drug conviction.  21 U.S.C. § 841(b); *see* Dkt. No. 40.

As Defendant's motion relies heavily upon the procedural history of this case in state court, the court will recount these proceedings in detail.

Defendant was arrested on August 2, 2006 during a traffic stop for the alleged violation of the Controlled Substances Act.[2] He was arrested by state authorities acting in a joint task-force with the federal Drug Enforcement Administration ("DEA").  The investigation was the result of wiretaps sought by the DEA and issued by the Hampden County Superior Court. During these operations, Defendant was intercepted allegedly engaging in illegal drug-related activities.

---

1. Co–Defendants Sarail Archilla and Elias Madera have filed motions to dismiss on similar grounds.  The court has issued separate memoranda denying their motions this day.

2. Defendant's motion to suppress related to this traffic stop is pending before the court. Dkt. Nos. 217, 235.

He was indicted by the state on cocaine trafficking and drug conspiracy charges on October 18, 2006 and was arraigned in Hampden County Superior Court on November 1, 2006. Bail was set at $50,000 cash or $500,000 bond.

Assistant District Attorney Charles Dolan was assigned to the case; he also served as a "Special Assistant United States Attorney" at the time as part of the joint state-federal drug task-force. On December 19, 2006, Attorney Dolan called Defendant's then-counsel, Attorney Andrew Klyman, to indicate that the federal government was interested in obtaining cooperation from Defendant in a federal investigation. Dkt. No. 228–2, Klyman Aff. at ¶ 19.

The state case was originally designated as a "Track B" case, the track used for routine criminal matters. On January 31, 2007, the case was designated "Track C," the track used for complicated matters, by agreement. *Id.* at ¶ 13. The record does not disclose the discovery deadlines set by the Superior Court but Attorney Klyman avers that "discovery was continuing and ongoing, but was coming very slowly from the State." *Id.* at ¶ 14.

On June 14, 2007, Attorney Klyman filed a motion to suppress evidence obtained through the traffic stop. After oral argument, the state court did not issue a ruling before the commencement of the federal case. *Id.* at ¶¶ 17–18; Dkt. No. 222–5, Ex. D. The state court docket sheet and the balance of the record reveals no other activity in this case except the filing of a joint pre-trial memorandum on July 12, 2007. Dkt. No. 222–5, Ex. D.

Defendant was indicted in this court on drug charges on August 28, 2007. He was arraigned on the federal indictment on September 7, 2007 and the state prosecutor entered a *nolle prosequi*, dismissing the case, on November 6, 2007.

Defendant was held for 404 days between his arrest by state authorities and his arraignment in federal court. For all this period before the federal indictment, he was in the custody of the state. During this time Commonwealth never offered him a plea bargain that he found satisfactory. Attorney Klyman avers that he "requested a plea offer from the District Attorney's office, but was not given one that did not require the Defendant to cooperate with the prosecution." Klyman Aff. at ¶ 23.

Moreover, while the record indicates that Attorney Klyman was aware of the possibility of a federal indictment, there is no evidence that state prosecutors ever used it as a justification for delaying the disposition of the state case. Klyman Aff. at ¶ 19. Indeed, no evidence exists on this record of any complaints by defense counsel to the state court judge about the pace of the state court prosecution for any reason for the entire 404 days of detention. *See* Dkt. 222–5, Ex. D.

### B. *United States v. Tavernier*

Defendant essentially argues in this case that the state prosecution was a sham—a mere pretext to warehouse Defendant and avoid the strictures of the federal Speedy Trial Act, 18 U.S.C. § 3161, while federal authorities gathered evidence to indict him in this court. A similar motion was filed in *United States v. Tavernier*, 07–cr–30016–MAP, Dkt. No. 42, and the court initially granted the defendant's request in that case for an evidentiary hearing. The court in this case and the two related cases will take a different approach for two reasons. *See* n. 1, *supra.*

First, it is not clear in retrospect whether the court's decision to grant an evidentiary hearing in *Tavernier* was well advised. After hearing the testimony of

several witnesses, the existence of a sufficient basis to support dismissal of that indictment was still very much in doubt. The issue became moot on June 25, 2009 when (with the evidentiary hearing unfinished, and at least two more witnesses scheduled to testify) Tavernier pled guilty to the charges against him.[3]

Second, the factual record supporting an evidentiary hearing in *Tavernier* was far more detailed and compelling than has been offered in either this case or the two companion cases.

*Tavernier* concerned circumstances superficially similar to this case in which Defendant Jason Tavernier, facing a mandatory life sentence on federal drug charges, asserted that state officials filed charges against him as a ruse to justify warehousing him while federal prosecutors gathered evidence to indict him. In support of his motion, Tavernier presented three specific pieces of evidence pertinent to the court's eventual decision to permit Tavernier an evidentiary hearing.

First, Tavernier submitted eleven volumes of transcripts from the state court proceedings, including a bail hearing held on March 26, 2007. *Tavernier*, 07–cr–30016–MAP, Dkt. No. 40. These transcripts suggested that the state prosecutors knew that they could not use evidence obtained by the DEA in the state proceeding because the wiretap did not comply with state law. Moreover, significant discovery regarding confidential informants, including any promises, rewards, and inducements was retained at the FBI offices in Boston. The production of this discovery was, arguably, unaccountably delayed while Tavernier remained in state custody.

Second, Tavernier's counsel recounted plea negotiations with the state prosecutor in detail. She hoped to secure a plea agreement with the state to avoid a federal prosecution, but the evidence suggested that the state prosecutor was unwilling, or perhaps even unable, to agree to a plea in the *state* case without the approval of *federal* authorities. In this stalemate, when Tavernier indicated that he might offer a guilty plea in state court without a plea agreement, the state prosecutor allegedly indicated that he would file a *nolle prosequi* to dismiss the state charges entirely if he attempted to do so.

Finally, and most significantly, Tavernier made some colorable claims of direct federal involvement in his state criminal proceeding. He pointed out that the Assistant United States Attorney responsible for the federal case wrote a letter to defense counsel on June 14, 2007, explicitly referring to the state court proceeding, making it clear that the federal government was not bound by any state plea deal, and stating that the so-called "Petit Policy" was purely discretionary.[4] The Assistant District Attorney also appeared to believe that the "Petit Policy" would have prevented him from continuing his state prosecution upon the issuance of a federal indictment. As a result of the representations made by the federal prosecutor and the state prosecutor's alleged reluctance to enter into a plea deal, Tavernier did not plead guilty in state court.

Nothing rising to this level has been offered by any of the three defendants on the current indictment. Indeed, as will be seen below, their preliminary proffers are

---

**3.** Prior to his plea, the Government dismissed the information filed pursuant to 21 U.S.C. § 851, with the result that at sentencing the mandatory sentence will be 10 years.

**4.** As the court understands it, under the "Petit Policy", the United States Attorney generally refrains from prosecuting individuals who are being or have been prosecuted in state court for the same offense.

wholly inadequate to support dismissal or an evidentiary hearing.

## III. *DISCUSSION*

The court will discuss Defendant's arguments under the Speedy Trial Act first, then turn to his Sixth Amendment allegations, and conclude with his Fifth Amendment claims.

### A. *Speedy Trial Act*

■ The 70–day federal Speedy Trial Act clock normally starts at the time of a federal arrest. 18 U.S.C. § 3161(b). An arrest on a state indictment may only set the clock running when significant evidence of collusion between state and federal prosecutors, or evidence that the state detention was for the sole or primary purpose of preparing the federal prosecution, appears on the record. *United States v. Garcia–Martinez,* 254 F.3d 16, 20 (1st Cir. 2001); *see also United States v. Dyer,* 325 F.3d 464, 468 (3d Cir.2003) (noting the "ruse" exception).

■ This "ruse" exception to the normal Speedy Trial rule is oft-described but rarely applied outside of the immigration context. *See, e.g., United States v. Pena,* 73 F.Supp.2d 56 (D.Mass.1999); *United States v. Vasquez–Escobar,* 30 F.Supp.2d 1364 (D.Fla.1998). Absent evidence of active collusion, the mere length of confinement by the state prior to federal indictment is not grounds for dismissal. *See United States v. Williamson,* 85 Fed.Appx. 943 (4th Cir.2004) (refusing to apply the exception where the defendant was held by the state for almost a year before the federal indictment was issued). A showing of cooperation between state and federal law enforcement officials during investigations, which is very common especially in drug cases, is similarly inadequate. *See United States v. Iaquinta,* 674 F.2d 260 (4th Cir.1982) (finding no Speedy Trial Act

violation where the state arrest immediately followed a joint undercover operation and the federal arrest occurred several months later). Finally, the exception remains unavailable even when state officials drop their charges after the federal indictment is handed down. *See United States v. Soto,* 1 F.3d 920 (9th Cir.1993).

■ To obtain an evidentiary hearing, a defendant who has filed a motion to dismiss must "allege facts, sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented. The defendant must allege facts that, if proven, would entitle him to relief." *U.S. v. Lewis,* 40 F.3d 1325, 1332 (1st Cir.1994) (citations and quotations omitted).

■ In essence, Defendant Ganious asserts that state and federal prosecutors colluded in their separate investigations, with the result that state officials held him unlawfully for 404 days on a claim that they did not intend, in good faith, to prosecute in order to allow the United States Attorney to build a case against him. The evidence, however, is entirely insufficient to support an evidentiary hearing on this contention.

Defendant's claims rest upon three allegations. He argues that the investigation that resulted in his arrest was controlled by federal law enforcement officials, that state prosecutors were dilatory in providing him with required discovery, and that his attempts to plead guilty were somehow thwarted. Dkt. No. 219.

Put simply, none of the allegations meet the high bar to entitle him to an evidentiary hearing regarding the application of the "ruse" exception. At best, Defendant has alleged that state and federal law enforcement authorities cooperated in their investigation and that, for reasons unspecified and apparently unknown, the state did not

provide him with timely discovery. If a motion had been filed in state court to force the discovery issue, then it would have been properly before the state courts. Significantly, no such motion was filed. Beyond this, as noted, mere delay cannot show the existence of a ruse without active federal involvement in the state prosecution. *See Garcia–Martinez*, 254 F.3d at 20.

Defendant has offered no evidence of any such active involvement beyond bare allegations regarding the level of control exercised by federal prosecutors in the overall investigation. Even the affidavit submitted by his attorney in state court, Andrew Klyman, states only that counsel "requested a plea offer from the District Attorney's office, but was not given one that did not require the Defendant to cooperate with the prosecution." Klyman Aff. at ¶ 23.

What role federal prosecutors or law enforcement officials had is not specified. Though Defendant attempted to plead to the state charges, it is undisputed that he sought only plea offers that did not require cooperation with the government. That he may have rejected offers containing terms unacceptable to him sheds no light on the decision-making process underlying the plea negotiations and, unlike in *Tavernier*, there is no evidence that state prosecutors refrained from offering a plea deal due to the lack of federal approval or because of an imminent federal indictment.

The contrast between the showing made in this case and in *Tavernier* is striking. In *Tavernier*, the defendant set forth specific allegations regarding his intent to plead guilty in state court and conversations between his attorney and the Assistant United States Attorney that caused

him not to do so. Further, Tavernier produced transcripts of state court proceedings that offered at least colorable evidence that state prosecutors were working on behalf of federal authorities. The submissions included some evidence that state prosecutors were reluctant to enter into a plea deal without federal assent. No such evidence has been submitted here.

The "ruse" exception undoubtedly serves an important federal interest, namely the enforcement of the Speedy Trial Act in light of complex and overlapping state and federal law enforcement efforts. Here, however, Defendant has not made a showing sufficient to entitle him even to an evidentiary hearing on his motion to dismiss the second superseding indictment against him. In this circumstance, the court will deny Defendant's motion without further proceedings.

### B.   *Sixth Amendment*

#### i.   *Speedy Trial Clause* [5]

█ It is black-letter law that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular provisions of the speedy trial provision of the Sixth Amendment." *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The First Circuit has been clear that the doctrine of dual sovereignty means that "the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible." *United States v. Marler*, 756 F.2d 206, 211 (1st Cir.1985) (citation and quotation omitted).

---

**5.** Defendant appears to assert a Speedy Trial Clause claim in addition to his statutory claim, though it is not clearly identified. Due to the gravity of this constitutional argument, the court will address it in full.

■ Defendant's constitutional claim arises, according to him, from the delay between his state arrest on August 2, 2006 and the September 7, 2007 federal indictment. He has shown no entitlement to relief because "no Sixth Amendment right to a speedy trial arises prior to the filing of the criminal charge" or the actual federal arrest. *United States v. McCoy*, 977 F.2d 706, 712 (1st Cir.1992). Until he was indicted in federal court, Defendant was in the sole custody of state officers, and thus, his rights under the Sixth Amendment to the federal constitution were not jeopardized or even implicated.

### ii. *Effective Assistance of Counsel*

■ Defendant suggests that he was denied effective assistance of counsel in violation of the Sixth Amendment because his state court lawyer could not adequately represent him without full discovery and could not plea bargain in good faith with the government on his behalf because the state court indictment was a ruse and state prosecutors never intended to go forward with the state indictment.

■ The Supreme Court has indicated that a breakdown in the adversarial process sufficient to find a violation of the right to effective assistance of counsel occurs when the accused is denied access to counsel or where counsel has not acted as an advocate for the accused. *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

At the risk of repetition, Defendant has not made the requisite showing to sustain this claim. There is no evidence that Defendant's attorneys in state and federal court have been anything other than available and zealous advocates. Attorney Klyman sought plea offers that did not require cooperation but could not obtain them. Beyond mere conclusory allegations, there is no evidence that federal prosecutors ac-

tively blocked attempts by Defendant to plea.

### C. *Fifth Amendment*

■ Defendant asserts the barest of Due Process Clause claims. Citing *Anderson v. United States*, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943), he contends that his confinement by state authorities and their alleged collaboration with federal officials violated a protected liberty interest. Again, this argument relies upon Defendant's naked allegations, with no supporting evidence, that the state proceedings against him were a sham. No evidence suggests that the state process occurred in collusion with federal authorities.

Indeed, in *Anderson,* state officers arrested and held a number of individuals in violation of state law. Federal investigators interrogated these individuals during their unlawful detention. The Supreme Court found that this level of collaboration was sufficient to violate due process. *Id.* The level of alleged collaboration here does not approach that in *Anderson,* where state authorities violated their own laws. As the *Marler* court noted, under the dual sovereignty doctrine, the potential for dual prosecutions does not constitute a constitutional violation in itself. *Marler,* 756 F.2d at 211.

### IV. *CONCLUSION*

For the foregoing reasons, Defendant's Motion to Dismiss, Dkt. No. 219, is hereby DENIED without a hearing.

It is So Ordered.